Slip Op. 15-18

UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| JTEKT CORPORATION, et. al., <br><br>               Plaintiff,<br><br>v.<br><br>UNITED STATES,<br><br>               Defendant,<br><br>and<br><br>THE TIMKEN COMPANY,<br><br>               Defendant-Intervenor. | Before: Timothy C. Stanceu, Chief Judge<br><br>Consol. Court No. 06-00250 |

**OPINION**

[Resolving the remaining contested issue and ruling on other pending matters in litigation contesting the final results of administrative reviews of an antidumping duty order on ball bearings and parts thereof]

Dated: February 25, 2015

    *Neil R. Ellis* and *Dave M. Wharwood*, Sidley Austin, LLP, of Washington, DC, for plaintiffs JTEKT Corp. and Koyo Corp. of U.S.A.

    *Diane A. MacDonald*, Baker & McKenzie LLP, of Chicago, IL, and *Kevin M. O'Brien*, Baker & McKenzie LLP, of Washington, DC, for plaintiffs and defendant-intervenors, American NTN Bearing Manufacturing Corp., NTN Bearing Corp. of America, NTN-Bower Corp., NTN Corp., NTN Driveshaft, Inc., and NTN-BCA Corp. and for plaintiffs FYH Bearing Units USA, Inc. and Nippon Pillow Block Company Ltd.

    *Greyson L. Bryan, McAllister Jimbo*, and *David Ribner*, O'Melveny & Myers LLP, of Washington, DC, for plaintiffs Nachi Technology, Inc., Nachi-Fujikoshi Corp., and Nachi America, Inc.

    *Robert A. Lipstein* and *Alexander H. Schaefer*, Crowell & Moring LLP, of Washington, DC, for plaintiffs NSK Corp., NSK Ltd., and NSK Precision America, Inc.

    *Claudia Burke*, Assistant Director, *L. Misha Preheim*, Senior Trial Counsel, Civil Division, Commercial Litigation Branch, U.S. Department of Justice, of Washington, DC, for defendant United States. With them on the brief were *Jeanne E. Davidson*, Director, and *Stuart*

*F. Delery*, Assistant Attorney General.  Of counsel on the brief was *Shana Hofstetter*, Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce.

    *Terence P. Stewart*, Stewart and Stewart, of Washington, DC, for plaintiff and defendant-intervenor, The Timken Company.  With him on the brief were *Geert De Prest* and *Lane S. Hurewitz*.

    Stanceu, Chief Judge:  The plaintiffs in this consolidated case[1] contested the final determination ("Final Results") that the International Trade Administration, U.S. Department of Commerce ("Commerce" or the "Department") issued to conclude the sixteenth periodic administrative reviews of antidumping duty orders on ball bearings and parts thereof from France, Germany, Italy, Japan, and the United Kingdom ("subject merchandise").  *Ball Bearings and Parts Thereof from France, Germany, Italy, Japan, and the United Kingdom: Final Results of Antidumping Duty Administrative Reviews,* 71 Fed. Reg. 40,064 (Int'l Trade Admin. July 14, 2006) ("*Final Results*").  The claims in this action pertain to the review of the antidumping duty order on subject merchandise from Japan (the "Order").  The sixteenth administrative reviews applied to entries of subject merchandise made from May 1, 2004 through April 30, 2005.  *Id.* at 40,064.

    Only one contested issue remains pending before the court in this case: whether it was permissible for Commerce to apply its "zeroing" methodology in the final results of the sixteenth reviews.  Under the zeroing methodology, Commerce assigns to U.S. sales made above normal value a dumping margin of zero, rather than a negative margin, when calculating

---

[1] Six actions are consolidated under Ct. No. 06-00250: Nippon Pillow Block Co. Ltd. v. United States (Ct. No. 06-00258); Timken US Corp. v. United States (Ct. No. 06-00271); NSK Ltd. v. United States (Ct. No. 06-00272); NTN Corp. v. United States (Ct. No. 06-00274); and Nachi-Fujikoshi Corp. v. United States (Ct. No. 06-00275).  Order (Nov. 15, 2006), ECF No. 21.

weighted-average dumping margins. As discussed herein, the court concludes that use of the zeroing methodology was in accordance with law.

Also pending before the court is the Department's second redetermination upon remand ("Second Remand Redetermination") issued in response to the opinion and order in *JTEKT Corp. v. United States*, 38 CIT __, __, Slip Op. 14-13 at 11 (Feb. 10, 2014) ("*JTEKT IV*"). *See Final Second Remand Determination* (May 12, 2014), ECF No. 201 ("*Second Remand Redetermination*"). Because the court concludes that Commerce has complied with the court's order in *JTEKT IV*, and because no party has commented in opposition, the court affirms the Second Remand Redetermination.

Finally, one of the parties to this case has filed an unopposed motion to terminate the injunction against liquidation of the entries of its merchandise, which the court grants.

# I. BACKGROUND

The court's prior opinions provide detailed background information on this case, which is supplemented and summarized briefly below. *See JTEKT Corp. v. United States*, 33 CIT 1797, 675 F. Supp. 2d 1206 (2009) ("*JTEKT I*") (first remand order); *JTEKT Corp. v. United States*, 35 CIT __, 780 F. Supp. 2d 1357 (2011) (*JTEKT II*) (second remand order); *JTEKT Corp. v. United States*, 36 CIT __, Slip Op. 12-72 (June 4, 2012) (*JTEKT III*) (staying action); *JTEKT IV*, 38 CIT at __, Slip Op. 14–13 (granting in part motions for reconsideration).

When described together with affiliated parties, there are six plaintiffs in this consolidated action, all of which contested various aspects of the Final Results: (1) JTEKT Corp. and Koyo Corp. of U.S.A. (collectively, "JTEKT"); (2) FYH Bearing Units USA, Inc. and Nippon Pillow Block Company Ltd. (collectively, "NPB"); (3) NSK Corp., NSK Ltd., and NSK Precision America, Inc. (collectively, "NSK"); (4) Nachi Technology, Inc., Nachi-Fujikoshi

Corp., and Nachi America, Inc. (collectively, "Nachi"); (5) American NTN Bearing Manufacturing Corp., NTN Bearing Corp. of America, NTN Bower Corp., NTN Corp., NTN Driveshaft, Inc., and NTN-BCA Corp. (collectively, "NTN"), which is both a plaintiff and a defendant-intervenor;[2] (6) and the Timken Company ("Timken"), which is also both a plaintiff and a defendant-intervenor. *JTEKT IV*, 38 CIT at __, Slip Op. 14–13 at 3.

On July 14, 2006, Commerce issued the Final Results, assigning the following antidumping duty margins to plaintiffs: JTEKT, 19.76%; Nachi, 16.02%; NPB, 25.91%; NSK, 6.93%; and NTN, 9.32%. *Final Results*, 71 Fed. Reg. at 40,066.

1.  The Department's Redetermination in Response to the Court's First Remand Order

On December 18, 2009, the court issued *JTEKT I*, affirming in part, and remanding in part, the Final Results. The court sustained, *inter alia*, the Department's decision to apply the zeroing methodology, *JTEKT I*, 33 CIT at 1865, 675 F. Supp. 2d at 1263. The court also affirmed the Department's decision to use a revised "model-match" methodology according to which it identified similar merchandise for the purpose of conducting comparisons between the U.S. price of subject merchandise and the price of comparable merchandise in the comparison market.[3] *Id.* at 1805-10, 675 F. Supp. 2d at 1218-22. The court remanded, *inter alia*, the

---

[2] American NTN Bearing Manufacturing Corp., NTN Bearing Corp. of America, NTN Bower Corp., NTN Corp., NTN Driveshaft, Inc., and NTN-BCA Corp. (collectively, "NTN") are defendant-intervenors in Timken US Corp. v. United States (Ct. No. 06-00271), which is consolidated in this action. *See* Order (Oct. 4, 2006), ECF No. 14 (Ct. No. 06-00271).

[3] To determine an antidumping margin, U.S. Department of Commerce ("Commerce" or the "Department") compares the U.S. price of the subject merchandise with the price of comparable merchandise (the "foreign like product") in the "home" market (i.e., the actual home market or another comparison market). 19 U.S.C. § 1677b. In identifying a foreign like product, Commerce attempts to match U.S. sales of the subject merchandise with home market sales of identical merchandise. *Id.* § 1677(16)(A). Where Commerce is unable to identify home market sales of identical merchandise, Commerce attempts to match a U.S. sale of subject merchandise (continued . . .)

Department's decision to reject NTN's proposal to incorporate into the model-match methodology additional design-type categories for specific types of ball bearings. *Id.* at 1817-20, 675 F. Supp. 2d at 1227-29.

On May 17, 2010, Commerce submitted its first redetermination on remand ("First Remand Redetermination"), addressing five issues the court identified in the remand order in *JTEKT I*. *Final Results of Redetermination* 1 (May 17, 2010), ECF No. 143 ("*First Remand Redetermination*"). On three issues, Commerce did not change its positions from the Final Results but provided additional explanation. *Id.* Those issues arose from NPB's proposal during the review to expand the choice of months for sampled transactions, Timken's claim that Commerce should have used U.S. interest rates, not Japanese interest rates, to calculate a portion of NTN's and Nachi's inventory carrying costs, and NTN's proposal to incorporate additional bearing design types in the Department's model-match methodology. *Id.* On two remaining issues, Commerce made changes to the Final Results. *Id.* Commerce redetermined the

---

(continued . . .)
with a home market sale of "similar merchandise." *Id.* § 1677(16)(B)-(C). Commerce uses a "model-match" methodology to identify similar merchandise. *JTEKT Corp. v. United States*, 33 CIT 1797, 1805-06, 675 F. Supp. 2d, 1206, 1218 (2009) ("*JTEKT I*"). According to the revised model-match methodology used in the sixteenth administrative reviews, Commerce matches a ball bearing model sold in the United States, i.e., a "subject" ball bearing, with one sold in the home market only if the two bearings are identical with respect to the following four physical characteristics: (1) load direction, (2) number of rows of rolling elements, (3) precision rating, and (4) ball bearing "design type." *Id.* at 1806, 675 F. Supp. 2d at 1218-19. The applied model-match methodology recognized the following ball bearing design types: angular contact, self-aligning, deep groove, integral shaft, thrust ball, housed, and insert. *Id.* For bearings that are identical with respect to the first four characteristics, Commerce compares ball bearings according to four quantitative characteristics: (5) load rating, (6) outer diameter, (7) inner diameter, and (8) width. *Id.* In matching bearings according to the second set of characteristics, Commerce excludes any potential matches in which the sum of the deviations for those four quantitative characteristics exceeds 40%. *Id.* Commerce also applies a "difference-in-merchandise adjustment" ("DIFMER" adjustment) for any difference in the variable cost of manufacturing, excluding any potential matches for which the DIFMER adjustment would exceed 20%. *Id.*

weighted-average antidumping duty margin for NTN after recalculating NTN's freight expense based on weight rather than value and the margin for Nachi upon limiting the Department's previous application of facts otherwise available and adverse inferences to instances of errors in certain of Nachi's reporting during the review. *Id.* Commerce assigned a revised margin of 8.02% to NTN and a revised margin of 13.91% to Nachi but did not revise the margins for any other respondent. *Id.* at 31.

## 2. The Department's Second Remand Order

NPB and NTN, but no other plaintiff, filed comments challenging the First Remand Redetermination. *JTEKT II*, 35 CIT at __, 780 F. Supp. 2d at 1360. NTN also filed a motion to stay this action pending further administrative action on, or alternatively for leave to submit further briefing on, the issue of whether or not it was lawful for Commerce to apply the zeroing methodology in the sixteenth administrative reviews. *Id*.

In *JTEKT II*, the court considered the First Remand Redetermination and construed NTN's motion for a stay as a motion for reconsideration of the court's decision in *JTEKT I* to uphold the Department's use of zeroing in the Final Results. *Id.* at __, 780 F. Supp. 2d at 1363. The court sustained in part, and remanded in part, the First Remand Redetermination, finding that the redetermination complied in part with the court's order in *JTEKT I* and with the applicable law. *Id.* at __, 780 F. Supp. 2d at 1371-72. The court directed Commerce to reconsider the use of zeroing in determining margins for JTEKT, Nachi, NPB, and NTN in light of two intervening decisions by the Court of Appeals for the Federal Circuit ("Court of Appeals") that called into question the legality of the Department's use of zeroing in administrative reviews. *Id*.

The court also ordered Commerce to reconsider its decision to reject NTN's proposal that Commerce incorporate additional design-type categories into the model-match methodology. *Id.* at __, 780 F. Supp. 2d at 1368-72.  In the First Remand Redetermination, Commerce determined, as NTN claimed, that there was some overlap between different design types in the Department's model-match methodology (namely, the "thrust ball" and "angular contact" design types) but concluded that no new design type was necessary because record evidence supported a finding that these overlapping bearings "have different load directions" that would preclude a mismatch of such bearings. *First Remand Redetermination* 17-19.  In *JTEKT II*, the court found the Department's explanation adequate to support the decision to reject additional design types proposed by NTN and affirmed the First Remand Redetermination on this issue. *JTEKT II*, 35 CIT at __, 780 F. Supp. 2d at 1369.  The court remanded the First Remand Redetermination on another issue, which was the Department's decision not to adopt in the final version of the First Remand Redetermination two additional design types that Commerce had proposed in the draft version of the remand redetermination. *Id.* at __, 780 F. Supp. 2d at 1370.

### 3.  The Court's Order Staying these Proceedings

Before Commerce issued a second remand redetermination, the court granted a request by several plaintiffs to stay this action pending the final disposition of *Union Steel v. United States,* CAFC Ct. No. 2012-1248, a case then pending before the Court of Appeals that involved the permissibility of the Department's use of zeroing in an administrative review despite having discontinued the methodology in antidumping investigations. *JTEKT III*, 36 CIT at __, Slip Op. 12-72 at 7-8.  The Court of Appeals issued an opinion in *Union Steel v. United States*, 713 F.3d 1101 (Fed. Cir. 2013) ("*Union Steel*"), on April 16, 2013 and a mandate on June 10, 2013.

### 4. Timken's and Defendant's Motions for Reconsideration

The court issued *JTEKT IV* on February 10, 2014, responding to requests by Timken and defendant either to reconsider or to grant relief from the court's order in *JTEKT II* pertaining to the zeroing claims. *JTEKT IV*, 38 CIT at __, Slip Op. 14–13 at 5. In *JTEKT IV*, the court maintained the directive from *JTEKT II* concerning NTN's proposal to incorporate additional design types in the Department's model-match methodology. *Id.* at __, Slip Op. 14–13 at 10. The court, however, relieved Commerce of the directive in *JTEKT II* concerning zeroing based on the intervening decision of the Court of Appeals in *Union Steel*. *JTEKT IV*, 38 CIT at __, Slip Op. 14–13 at 8. The court permitted parties to submit voluntary supplemental briefing on the question of whether *Union Steel* is dispositive of the zeroing claims in this case and, if not, what further action the court should take to resolve those claims. *Id.* at __, Slip Op. 14–13 at 9. Defendant and Timken each filed supplemental briefing, but NTN informed the court that it would not file a supplemental brief on this issue. Def.'s Supplemental Br. Concerning *Union Steel* (Mar. 7, 2014), ECF No. 198 ("Def.'s Supplemental Br."); The Timken Co.'s Supplemental Br. Concerning *Union Steel* (Mar. 12, 2014), ECF No. 199 ("Timken's Supplemental Br."); Pls.' Resp. to Ct. Order Dated Feb. 10, 2014 Inviting Supplemental Briefing (Mar. 12, 2014), ECF No. 200 ("NTN's Letter Concerning *Union Steel*"). The court, in *JTEKT IV*, also denied a motion by Timken requesting deconsolidation and dismissal of several of the remaining claims after concluding that there was no just reason for piecemeal adjudication of this case, in accordance with USCIT Rule 54(b). *JTEKT IV*, 38 CIT at __, Slip Op. 14–13 at 9-10.

### 5. The Department's Second Remand Redetermination

On May 12, 2014, Commerce issued the Second Remand Redetermination, in which it did not recalculate the margin for any party. *Second Remand Redetermination* 4. Timken, but

no other party, filed comments thereon, and defendant filed a reply to these comments on July 9, 2014.  The Timken Co.'s Comments on the U.S. Dep't of Commerce's May 12, 2014 Final Second Redetermination Pursuant to Ct. Remand (June 11, 2014), ECF No. 203; Def.'s Resp. to Comments, ECF No. 204.

## II.  DISCUSSION

The court exercises jurisdiction under section 201 of the Customs Courts Act of 1980, 28 U.S.C. § 1581(c), pursuant to which the court reviews actions commenced under section 516A of the Tariff Act of 1930 ("Tariff Act"), 19 U.S.C. § 1516a(a)(2)(B)(iii), including an action contesting the final results of an administrative review that Commerce issues under section 751 of the Tariff Act, 19 U.S.C. § 1675(a).[4]

### A.  The Court Sustains the Department's Use of Zeroing in the Final Results

Plaintiffs JTEKT, NPB, NTN, and Nachi challenged the Department's application of zeroing in the Final Results.  *JTEKT I*, 33 CIT at 1801-05, 675 F. Supp. 2d at 1214-18.  As noted above, the court in *JTEKT I* sustained the Department's decision to apply the zeroing methodology in the sixteenth administrative reviews.  *Id.* at 1865, 675 F. Supp. 2d at 1263.  Then, in *JTEKT II*, the court directed Commerce to reconsider the use of zeroing in light of two intervening decisions of the Court of Appeals that called into question the Department's use of zeroing in administrative reviews.[5]  *JTEKT II*, 35 CIT at __, 780 F. Supp. 2d at 1362-64.  Specifically, the court instructed Commerce on remand to either reconsider the use of zeroing or

---

[4] All statutory citations herein are to the 2006 edition of the U.S. Code.

[5] The Court of Appeals for the Federal Circuit ("Court of Appeals") held that Commerce had not provided a satisfactory explanation for using different interpretations of 19 U.S.C. § 1677(35) in the antidumping administrative review and investigation contexts.  *See Dongbu Steel Co., Ltd. v. United States*, 635 F.3d 1363, 1371-73 (Fed. Cir. 2011); *JTEKT Corp. v. United States,* 642 F.3d 1378, 1383-85 (Fed. Cir. 2011).

"set forth an explanation of how the language of 19 U.S.C. § 1677(35) as applied to the zeroing issue permissibly may be construed in one way with respect to investigations and the opposite way with respect to administrative reviews . . . ." *JTEKT II*, 35 CIT at __, 780 F. Supp. 2d at 1371.

In *JTEKT IV*, the court, in light of the intervening decision by the Court of Appeals in *Union Steel*, relieved Commerce of the directive concerning zeroing contained in *JTEKT II* such that Commerce no longer was required to reconsider or provide an explanation of the use of zeroing in the sixteenth administrative reviews. *JTEKT IV*, 38 CIT at __, Slip Op. 14–13 at 11. Because the court granted relief under USCIT Rule 59(d) for reasons not stated in defendant's and Timken's motions for reconsideration or relief, the court also permitted optional supplemental briefing on the narrow question of whether the holding of *Union Steel* is dispositive of the zeroing claims in this case, and if not, what further action the court should take to resolve those claims. *Id.* at __, Slip Op. 14–13 at 9. In supplemental briefing, both defendant and Timken argued that *Union Steel* supported the conclusion that the continued use of zeroing in administrative reviews is lawful. Def.'s Supplemental Br. 1-2; Timken's Supplemental Br. 1-2. NTN informed the court that it would not file a supplemental brief on this issue. NTN's Letter Concerning *Union Steel* 1. No other party filed supplemental briefing.

As described in *JTEKT IV*, the court preliminarily concluded that the claims challenging zeroing in this case are indistinguishable from those rejected in *Union Steel*, in which the Court of Appeals affirmed the Department's use of zeroing in administrative reviews despite

discontinuing the practice in antidumping investigations, *JTEKT IV*, 38 CIT at \_\_, Slip Op. 14-13 at 8, and the court received no supplemental briefing contesting this conclusion.⁶

The court considers *Union Steel* to have affirmed the Department's use of the zeroing methodology in an administrative review of an antidumping duty order in circumstances that the court views as analogous to those presented in this case. The court considers *Union Steel* to be binding precedent that is dispositive of all claims in this consolidated case that challenged the Department's use of the zeroing methodology in the Final Results. The court, therefore, will affirm the use of zeroing in the judgment it will enter to conclude this litigation.

B.  The Court Sustains the Department's Decision to Reject NTN's Proposal that Commerce Adopt Additional Design-Type Categories in the Model-Match Methodology

In challenging the Final Results, NTN claimed that Commerce erred in refusing to recognize and apply the additional ball bearing design types that NTN proposed for use in the model matching process. *JTEKT I*, 33 CIT at 1817, 675 F. Supp. 2d at 1227. As discussed above, the court in *JTEKT I* remanded this issue to Commerce for reconsideration. *Id.*, 33 CIT at 1817-20, 675 F. Supp. 2d at 1227-29. In *JTEKT II*, the court found adequate an explanation that Commerce provided on remand for not adopting NTN's proposed additional design-type categories. *JTEKT II*, 35 CIT at \_\_, 780 F. Supp. 2d at 1368-72. Nevertheless, the court remanded the Department's decision not to incorporate into the model-match methodology additional design types that Commerce had proposed in the draft version of the First Remand

---

⁶ Defendant argues that *Union Steel v. United States*, 713 F.3d 1101 (Fed. Cir. 2013) ("*Union Steel*"), does not apply to this case as the final determination challenged here was issued in 2006, when Commerce used zeroing in both investigations and administrative reviews, whereas *Union Steel* dealt with the application of zeroing in an administrative review issued after Commerce discontinued zeroing in investigations. Def.'s Supplemental Br. Concerning *Union Steel* 1-2 (Mar. 7, 2014), ECF No. 198 ("Def.'s Supplemental Br."). Nevertheless, defendant also argues that even if *Union Steel* were to apply to this case, it would support a finding that the application of zeroing in this case was lawful. *Id.* at 2.

Redetermination.  *Id.*  The court instructed Commerce to "reconsider NTN's proposal to incorporate into the model-match methodology additional design-type categories to the extent necessary to correct any errors revealed by the Department's review of the record evidence."  *Id.* at __, 780 F. Supp. 2d at 1371.

During the second remand proceeding, Commerce issued a supplemental questionnaire to NTN seeking clarification concerning a number of NTN's bearings.  *Supplemental Questionnaire to NTN* (Aug. 15, 2011) (Remand Admin.R.Doc. No. 1).  Based on NTN's response to this supplemental questionnaire, NTN's Supplemental Questionnaire Resp. (Aug. 22, 2011) (Remand Admin.R.Doc. No. 2), Commerce concluded that no mismatches of NTN's bearings had resulted from the Department's design-type categories and so it was "neither necessary nor appropriate to create any additional design types."  *Second Remand Redetermination* 4.

Because the court concludes that the Department's determination complies with the court's directive in *JTEKT II* concerning additional design types, and because NTN filed no comments opposing the Department's determination, the court will sustain the Second Remand Redetermination.

C.  The Court Grants JTEKT's Motion to Terminate the Injunction Affecting JTEKT's Entries

On October 23, 2014, after Commerce submitted the Second Remand Redetermination, JTEKT filed a motion requesting that the court terminate the injunction on JTEKT's entries at issue in this case, explaining that "JTEKT no longer seeks to address the dumping margins that were calculated by the U.S. Department of Commerce in the administrative review that is the subject of this litigation."  Mot. to Terminate Prelim. Inj. 1 (Oct. 23, 2014), ECF No. 206-1.  According to JTEKT, defendant consents to this motion.  *Id.* at 2.  Timken filed a reply

consenting to JTEKT's motion. The Timken Co.'s Notice of Consent to JTEKT's Oct. 23, 2014 Mot. to Terminate the Prelim. Inj. 1 (Nov. 5, 2014), ECF No. 209. As all affected parties consent, the court grants JTEKT's motion to terminate the injunction on JTEKT's entries. *See* Order (Sept. 11, 2006), ECF No. 8 (enjoining liquidation of JTEKT's entries through all appeals of this litigation). All other orders of injunction entered in this case that affect any other plaintiff remain in effect according to the terms of those orders.[7]

### III. CONCLUSION

For the reasons discussed herein, upon consideration of the Second Remand Redetermination, all comments submitted thereon, and upon due deliberation, the court will affirm the Second Remand Redetermination concerning NTN's proposal of additional design types and the Final Results concerning the Department's use of zeroing in the sixteenth administrative reviews. The court will order the termination of the injunction against liquidation of entries of JTEKT's merchandise. The court will enter a judgment in accordance with this Opinion.

/s/ Timothy C. Stanceu
Timothy C. Stanceu
Chief Judge

Dated: February 25, 2015
New York, NY

---

[7] The court entered orders of injunction in each of the consolidated cases: Order (Aug. 31, 2006), ECF No. 17 (Ct. No. 06-00258) (NPB's entries); Order (Oct. 6, 2006), ECF No. 16 (Ct. No. 06-00271) (NTN's and Nachi's entries); Order (Aug. 29, 2006), ECF No. 9 (Ct. No. 06-00272) (NSK's entries); Order (Aug. 23, 2006), ECF No. 8-2 (Ct. No. 06-00274) (NTN's entries); and Order (Sept. 19, 2006), ECF No. 17 (Ct. No. 06-00275) (Nachi's entries).